No. 1903

Second Circuit

ISAIAH  MILLER  v.  MRS.  J.  E.  CATES,
ET  AL.

(October 21, 1925, Opinion and Decree.)
(December 1, 1925, Rehearing Refused.)

(*Syllabus by the Editor.*)

1. **Louisiana      Digest—Prescription—Par. 219.**

Where a plaintiff brings an action to correct a description of land as contained in the deed, the defendant cannot plead prescription of one year, provided by Article 2498 of the Civil Code for diminution of the price or for the canceling of the contract.

2. **Louisiana Digest—Error and Mistake—Par. 15, 16.**

Where the evidence clearly shows that the defendant intended to sell and the plaintiff intended to buy the land in controversy and that the description of the land was omitted from the deed by an oversight of the Notary a proper correction should be made to the deed by a judgment of the court.

3. **Louisiana      Digest—Appeal—Par.   625, 636.**

The finding of the trial judge on questions of fact where the evidence is conflicting not being manifestly erroneous is affirmed.

4. **Louisiana Digest—Evidence—Par. 240.**

As between the parties to the sale, parol evidence is admissible for the purpose of correcting an error in a description of land in a deed.

ON APPLICATION FOR REHEARING.

5. **Louisiana Digest—Marriage—Par. 76.**

Where a wife sold property to the plaintiff who paid for it by giving money and a note, the fact that the defendant permitted her husband's creditors to receive the money instead of receiving it herself, does not bring the case within the prohibition prescribed by Article 2398 of the Civil Code. The sale thus made is valid.

Appeal from Third Judicial District Court of Louisiana, Parish of Bienville, Hon. J. E. Reynolds, Judge.

This is a suit to correct an error in the description of the land sold by a notarial Act. A plea of prescription was filed by defendant. There was judgment for plaintiff and defendants appealed.

Judgment affirmed.

Goff and Barnette, of Arcadia, attorneys for plaintiff, appellee.

Samuel Barksdale, of Ruston, F. R. Taylor, of Ruston, attorneys for defendant, appellants.

ODOM, J. This is a suit to correct an error in a description of land sold by notarial act.

Plaintiff alleges that he is the owner and in possession of the SE¼ of SE¼ of Section 5 Township 18 North, Range 7 West in the Parish of Bienville which he purchased from the defendant, Mrs. J. E. Cates on the 8th day of December 1917, but that through error in the writing of the deed this land was omitted from the description.

He alleges that the deed made by defendant Mrs. J. E. Cates to him is not the depository of the intention of the parties and should be corrected by judgment of the court so as to include the SE¼ of SE¼ of Section 5.

Defendant answered admitting that she executed the deed to plaintiff but denied that there was any error in the description in the deed.

She further sets up in answer that the deed which she made to the plaintiff was a nullity for the reason that she received no adequate consideration for the land and she attacks the sale for lesion beyond moiety.

She prays that the plaintiff's demand be rejected and, in reconvention, that the deed made by her to him on December 8, 1917, be decreed null.

In this court defendant pleads the prescription of one year, setting up that this is "a suit quantum minoris and is prescribed in twelve months".

ON THE PLEA OF PRESCRIPTION.

Article 2498 of the Civil Code provides that the action for supplement of the price on the part of the seller, and that for diminution of the price or for the cancelling of the contract on the part of the buyer, must be brought within one year from the day of the contract, otherwise it is barred.

The plea of prescription, we assume is filed under this law. But it is perfectly clear that the plaintiff, the purchaser from Mrs. Cates, the defendant, has not brought an action to cancel the contract nor for the diminution of the price. His suit is to correct an error in the description of the land as contained in the deed. He alleges that he purchased the SE¼ of SE¼ of Section 5 Township 18 North, Range 7 West but that through error in drawing the deed this land was omitted, and he prays for judgment "correcting the deed so as to include and describe said subdivision".

The plea of prescription is therefore overruled.

It seems that Mrs. Cates, the defendant, was indebted to the mercantile firm of Hamner & Co. in a considerable sum, which indebtedness was long past due. Hamner & Co. had made repeated demands for payment of the debt but due to the fact that she had no money she could not pay. However, she owned some land which she agreed to sell in order to satisfy the debt. Hamner & Co. did not want the land but ascertained that Isaiah Miller, the plaintiff herein, would purchase the land but was not willing to pay a price sufficient to satisfy the debt of Hamner & Co., and Hamner & Co. agreed to discount their debt so as to bring the land within the price Miller was willing to pay. Mrs. Cates was willing to sell in order to pay the debt and a sale by her to Miller was agreed upon.

The sale of the land was by notarial act passed before W. H. Lazarus, a Notary Public of Bienville Parish, dated December 8, 1917, and signed by Mrs. Cates, authorized by her husband, Elton Cates, the land described in the deed being as follows: NW¼ of NE¼; NE¼ of NW¼; and N½ of NW¼ of NW¼ of Section 5 and ten acres on east side of NE¼ of NE¼ of Section 6, Township 16 North, Range 7 West, and twenty-five acres on north side of NW¼ of NE¼ of Section 9, Township 18 North, Range 7 West; with no acreage expressed; but a calculation shows that the description calls for 135 acres.

The defendant owned the SE¼ of SE¼ of Section 5, Township 18 North, Range 7 West at the date of the sale, and it is plaintiff's contention that he purchased 175 acres, including the 40 acres in controversy, which was omitted from the description in the deed by error.

Defendant contends that she intended to sell and did sell only 135 acres as described in the deed.

Mr. Leslie, Hamner, a member of the firm of Hamner & Co., who seems to have negotiated the sale, swears positively that he talked the matter over with Mrs. Cates and her husband and that they agreed to sell 175 acres, and that Mrs. Cates and her husband went to Arcadia, the parish site, and looked up the description of the land which she owned and found that she owned not only the land described in this deed but the SE¼ of SE¼ of Section 5 also.

He says that the whole matter was discussed and that Mrs. Cates agreed to sell 175 acres including the land in controversy.

He further testifies that when the error

was discovered Mrs. Cates agreed to correct it and asked him to prepare a correction deed including the forty acres omitted and that. he prepared a deed in accordance with her request but that he did not present it to her for her signature on account of the fact that there arose about that time some litigation between her and one Joby Miller over the verity of a certain judgment which said Joby Miller had obtained against her under a foreclosure proceeding on a mortgage operating against the land in controversy, which mortgage it appears was given long before the sale to plaintiff.

The plaintiff, Miller, testified that Mrs. Cates went to him to sell 175 acres of land in Sections 5, 6 and 9 and that based no her proposition to sell 175 acres he agreed to purchase and that both Mrs. Cates and her husband said on the day of sale that there was 175 acres of land.

He says they thoroughly understood that they were selling that much land and, as before stated, it takes the forty acres of land alleged to be omitted from the deed in order to make up an area of 175 acres.

The plaintiff testified that he would not have purchased the tract had he not thought that the land in controversy was included.

On the other hand, the defendant and her husband swear positively that she did not intend or agree to sell the land in controversy; that she sold only 135 acres as described in the deed, and Elton Cates, the defendant's husband, swore that he told his wife that if she intended to sell the SE¼ of SE¼ of Section 5 he would not sign the deed to authorize her.

Mrs. Cates denied that she told Leslie Hamner that she was willing to correct the error, although she admits that she spoke to him about it.

In the suit above referred to between Mrs. Cates and Joby Miller wherein Mrs.

Cates successfully attacked and had annulled a judgment which Joby Miller had obtained against her, she gave testimony as follows:

"Q. Didn't you make Isaiah a deed?
"A. Yes, sir.
"Q. Well, when he found out you made an error in the deed, you say Joby offered you $5.00 to correct it?
"A. Yes, sir, he offered me $5.00 to sign it.
                    *  *  *
"Q. And you made Isaiah a deed and through error that land was left out?
"A. I think so."

The testimony was given in another suit which was tried prior to the trial of the present suit and was introduced in this suit and filed without objection.

The land referred to is evidently the land in controversy in this suit, as that was the land which she had previously mortgaged to Joby Miller.

Mr. Lazarus, the Notary who wrote the deed and before whom it was passed, testified that all parties were present when he prepared it and that when he got to the place in the deed where the description of the land should be inserted he found that the parties did not have it and that they had to go to Leslie Hamner to get it and that Hamner sent over a slip of paper with the description written upon it. The slip of paper is in evidence. The description is written with lead pencil and includes not only the land described in the deed but also the SE¼ of SE¼ of Section 5, the land in controversy which was omitted. This slip of paper went back into the hands of Hamner after the sale and was kept in his files along with other papers in connection with the transaction and was produced by him for the purposes of this trial.

It is defendant's contention that this slip of paper, which was presented to the Notary at the time the deed was written, did

not contain a description of the SE¼ of SE¼ of Section 5, and it is suggested that this particular description was inserted on the slip of paper after it got back into the hands of Hamner.

Mr. Lazarus, the Notary, could not swear positively whether the SE¼ of SE¼ of Section 5 was included in the description on the price of paper at the time he wrote the deed. He says it may have been and that he omitted it by mistake.

Our examination of the paper on which the description was written convinces us that the SE¼ of SE¼ of Section 5 was inserted thereon at the time it was presented to the Notary.

The description as written on the paper is as follows:

"10 on east side NE NE 6      )
"N½ of NW of NW              )
"NE of NW                    )
"NW of NE                    )
"SE SE          5     18     7 )
"25 acres NW of NE           9 )

It will be noted that the ten acres first described is in section 6. No section number follows the next three subdivisions described but the figure 5, indicating the section number, follows the description "SE SE", and the "18    7", indicating the township and range, follows on a straight line, indicating, as we think, and as evidently interpreted by the Notary, that those four subdivisions were in Section 5, Township 18, North Range 7 West. The figures "5 18    7" are written on a straight line to the right of "SE SE".

It is perfectly evident from the appearance of the writing that the description "SE SE    5       18    7" was all written by the same person and we conclude that this line of letters and figures was on the paper at the time it was presented to the Notary; otherwise he would not have known what section, township and range to insert.

Not only that, but to the writ of the

first five subdivisions described there is a brace which encloses all five subdivisions.

By reference to the slip of paper above referred to we note that there is a slight difference in the appearance of the writing in which the first four subdivisions are described and that in which the SE¼ of SE¼ is written. But Mr. Hamner explains this difference by saying that he made the description of the first four subdivisions from some records in his office and that he got the other description, that is, SE ¼ of SE¼, over the telephone and that he carried the slip of paper to the telephone and wrote the latter description while there.

It will also be noted that the description:

"25 acres NW of NE 9" is inserted on the slip of paper below the "SE SE    5    18 7". This former description is included in the deed, which indicates that it was written on the paper when the Notary received it and there is no suggestion that it was inserted thereon subsequently to the preparation of the deed. The appearance of the paper does not indicate that the description "SE SE    5       18    7" was written in as an afterthought.

Our conclusion is that the plaintiff intended to purchase and that the defendant intended to sell the land in controversy and that the description of the land was omitted from the deed by oversight of the Notary.

Our conclusion on this point is strengthened by the fact that the District Judge, who heard the witnesses testify and who probably know them personally, so held.

The evidence is conflicting, and we cannot say that the trial judge manifestly erred in his findings.

It is settled that as between the parties an error in the description of land in a deed may be corrected through judicial process and that parol evidence is admissible for that purpose.

Levy vs. Ward, 33 La. Ann. 1033.

Coleman vs. Thibodaux, 119 La. 474, 44 South. 269.

Garrett vs. Spratt, 131 La. 707, 66 South. 199.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed with costs.

---

## ON APPLICATION FOR REHEARING.

CARVER, J. Defendants' counsel, in an application for rehearing, urge:

1. That plaintiff having alleged in his petition that the forty acres in question was omitted from the deed and another tract included in lieu thereof, cannot recover merely on showing the omission by error of the tract for which he asks judgment.

2. That the evidence fails to show that the land in question, namely, SE¼ of SE¼ of Section 5, Township 18 North, Range 7 West, was omitted by error.

3. That the court erred in finding that plaintiff was in possession of the land in question.

4. That the deed was void because within the prohibition of Article 2398 of the Civil Code.

5. That the deed was without consideration passing to Mrs. Cates.

### I.

The gravemen of plaintiff's complaint is the omission by error of the land sued for, and not so much the inclusion of the other tract. If the 40 acres was intended to be bought and sold and was omitted from the deed through error of the Notary, we think this would entitle plaintiff to recover whatever be the facts about the 25 acres which were included and which plaintiff claims did not belong to defendant. Furthermore, while the matter is not so very clear by the deeds, yet it is very likely that the 25 acres on the north side of the NW ¼ of NE¼ of Section 9 did not belong to defendant. The deeds to be found in the record do not exactly correspond to those offered in evidence. Those offered were as follows:

#### BY THE PLAINTIFF.

Drake to Heflin.
Heflin to Gibson.
Gibson to Burgess.
Burgess to Standifer.
Standifer to Wiley Miller.
Wiley Miller to Mrs. E. C. Miller.
Mrs. E. C. Miller to Sallie Reno.
Sallie Reno to Copeland.
Mrs. E. C. Miller to Joby Miller.

#### BY THE DEFENDANT.

Heflin to J. E. Miller.
Mrs. Julia Cates and Clarence Miller to Mrs. Ninny Spear.
Mrs. J. E. Cates and Mrs. Ninny Spear to Clarence Miller.

Of the deeds offered by plaintiff, the following are not found in the record, namely:

Drake to Heflin.
Heflin to Gibson.
Standifer to Wiley Miller.
Mrs. E. C. Miller to Sallie Reno.

The rest are in the record, and we also find a deed from Heflin to Drake given in 1877 covering the NW¼ and W½ of NE¼ of Section 9 and other land, with right of redemption reserved. Perhaps this right of redemption was exercised, because the deed from Heflin to J. E. Miller, the first husband of defendant, of date October 6, 1898, covers 25 acres in NW¼ of NE¼ of Section 9 and other land.

Defendants' theory is that by virtue of this deed and the deed from the heirs of Clarence Miller to Ninny Spear, and the heirs of Ninny Spear to Clarence Miller, which two deeds assigned to the vendees therein certain lands in settlement of their

interests in J. E. Miller's succession, that this left defendant the owner of the 25 acres in NW¼ of NE¼ of Section 9.

Of the deeds filed by plaintiff, though, the one of Wiley Miller to Mrs. E. C. Miller is dated February 5, 1898, and covers the whole NE¼ of Section 9.

The deed from Mrs. E. C. Miller to Sallie Reno is not in the record.

The one from Sallie Reno to Copeland is in the record. It is dated July 13, 1912, and covers NE¼ of NE¼ and 6 acres off of the east side of W½ of NE¼ of Section 9.

The deed from Mrs. E. C. Miller to Joby Miller is also in the record. It is dated April 9, 1915, and covers, besides other land, 20 acres on the west side of W½ of NE¼ of Section 9.

The deed from Wiley Miller to Mrs. E. C. Miller antedates the deed from John Heflin to J. E. Miller by several months. It is likely, therefore, that defendants' title was not good to the 25 acres in NW¼ of NE¼ of Section 9. Even if it were, though, as said above the question is not so much the inclusion of this land as the omission of the other.

## II.

As to the sufficiency of the proof, on the question of whether the SE¼ of SE¼ of Section 5 was mutually intended to be included or not, this is purely a question of fact.

An appellate court should not in any case reverse the District Judge on such a question unless it finds that he manifestly erred. This rule is of special application where the question turns on the credibility of witnesses, as is the case here.

## III.

The question whether the plaintiff or the defendants were in possession of the 40 acres is immaterial. The plaintiff is entitled to possession. The (description) being out of it cannot affect his rights.

## IV.

Civil Code, 2398, does not, in our opinion, apply to this case, which was a sale to a third person for the purpose of raising money to pay a debt and not a giving in payment to a creditor to satisfy a debt.

The article reads:

"The wife, whether separated in property by contract or by judgment, or not separated, cannot bind herself for her husband, nor conjointly with him, for debts contracted by him before or during the marriage."

If she had conveyed the property to Hamner, the creditor, and if the debt for which it was conveyed was her husband's, it might be claimed that the transaction was within the prohibition of this article. As to this we express no opinion. But she did not do this. She sold the property to the plaintiff who paid for it by giving money and a note. The fact that defendant permitted her creditor to receive the money instead of receiving it herself does not alter the situation. If she had received the money herself she would have had the right to pay it either to her own or to her husband's creditor. It was equally her right to permit the creditor to receive it from the purchaser directly. Besides, the deeds shows that besides the $200 cash paid on the purchase plaintiff gave a note for $550.00 payable to the order of Mrs. Cates. This note must have been endorsed by Mrs. Cates over to Hamner.

## V.

What is said under the last heading applies to defendants' fifth complaint also. The debt was not the consideration flowing to Mrs. Cates but, as shown above, Miller did pay the purchase price. Her permitting it to go to Hamner, whether Hamner was her creditor or her husband's does not entitle her to deprive Miller of property which in good faith he has bought and paid for.

Rehearing refused.